UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

ZABRENA LAVERNE CONLEY

VERSUS

CAROLYN W. COLVIN, ACTING
COMMISSIONER OF SOCIAL
SECURITY

CIVIL ACTION

NUMBER 13-333-JWD-SCR

**NOTICE**

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the U. S. District Court.

In accordance with 28 U.S.C. §636(b)(1), you have 14 days after being served with the attached report to file written objections to the proposed findings of fact, conclusions of law, and recommendations set forth therein. Failure to file written objections to the proposed findings, conclusions and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.

ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Baton Rouge, Louisiana, February 19, 2015.

STEPHEN C. RIEDLINGER
UNITED STATES MAGISTRATE JUDGE

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

ZABRENA LAVERNE CONLEY

VERSUS

CAROLYN W. COLVIN, ACTING
COMMISSIONER OF SOCIAL
SECURITY

CIVIL ACTION

NUMBER 13-333-JWD-SCR

**MAGISTRATE JUDGE'S REPORT**

Plaintiff Zabrena Laverne Conley brought this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of Carolyn W. Colvin, the Acting Commissioner of Social Security ("Commissioner") that denied her claim for supplemental security income ("SSI") benefits.

Based on a careful review of the entire administrative record as a whole, the standard of judicial review under § 405(g) and the analysis that follows, the Commissioner's decision should be affirmed.

**Standard of Review**

Under § 405(g), judicial review of a final decision of the Commissioner denying disability benefits is limited to two inquiries: (1) whether substantial evidence exists in the record as a whole to support the Commissioner's findings, and (2) whether the Commissioner's final decision applies the proper legal standards. *Myers v. Apfel*, 238 F.3d 617, 619 (5th Cir. 2001); *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005). If substantial

evidence supports the Commissioner's findings, they are conclusive and must be affirmed. *Richardson v. Perales*, 402 U.S. 389, 91 S.Ct. 1420, 1422 (1971); *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995). Substantial evidence is that which is relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion. It is more than a mere scintilla and less than a preponderance. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994); *Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000). A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision. *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001). In applying the substantial evidence standard the court must review the entire record as whole, but may not reweigh the evidence, try the issues de novo, or substitute its judgment for that of the Commissioner, even if the evidence weighs against the Commissioner's decision. *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000). Conflicts in the evidence are for the Commissioner and not the court to resolve. *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002).

If the Commissioner fails to apply the correct legal standards, or provide a reviewing court with a sufficient basis to determine that the correct legal principles were followed, it is grounds for reversal. *Bradley v. Bowen*, 809 F.2d 1054, 1057 (5th Cir. 1981); *Western v. Harris*, 633 F.2d 1204, 1206 (5th Cir. 1981);

*Wiggins v. Schweiker*, 679 F.2d 1387, 1389 (11th Cir. 1982).

A claimant has the burden of proving that he or she suffers from a disability, which is defined as a medically determinable physical or mental impairment lasting at least 12 months that prevents the claimant from engaging in substantial gainful activity. 20 C.F.R. § 416.905. The regulations require the ALJ to apply a five step sequential evaluation to each claim for benefits. 20 C.F.R. § 416.920. In the five step sequence used to evaluate claims the Commissioner must determine whether: (1) the claimant is currently engaged in substantial gainful activity; (2) the claimant has a severe impairment(s); (3) the impairment(s) meets or equals the severity of a listed impairment in Appendix 1 of the regulations; (4) the impairment(s) prevents the claimant from performing past relevant work; and, (5) the impairment(s) prevents the claimant from doing any other work. *Masterson*, 309 F.3d at 271.

At step three, listed impairments are descriptions of various physical and mental illnesses and abnormalities generally characterized by the body system they affect. Each impairment is defined in terms of several specific medical signs, symptoms, or laboratory test results. For a claimant to show that his impairment matches a listed impairment he must demonstrate that it meets all of the medical criteria specified in the listing. An impairment that exhibits only some of the criteria, no matter how

3

severely, does not qualify. *Sullivan v. Zebley*, 493 U.S. 521, 529-32, 110 S.Ct. 885, 891-92 (1990); 20 C.F.R. § 404.1525.

The burden of proving disability rests on the claimant through the first four steps. At the fourth step the Commissioner analyzes whether the claimant can do any of her past relevant work. If the claimant shows at step four that he or she is no longer capable of performing past relevant work, the burden shifts to the Commissioner to show that the claimant is able to engage in some type of alternative work that exists in the national economy. *Myers*, supra. If the Commissioner meets this burden the claimant must then show that he or she cannot in fact perform that work. *Boyd*, 239 F.3d at 705.

**Background and Claims of Error**

Plaintiff was 35 years old at the time of the administrative law judge's ("ALJ") decision.[1] Plaintiff graduated from high school, and her past relevant work consisted of employment as a medical records scanning clerk, food service worker and cashier. AR pp. 160, 183-84, 201-08. In her application for SSI benefits filed on September 29, 2010 the plaintiff alleged that she became disabled and no longer able to work as of June 7, 2008 because of chronic knee problems, leg pain, headaches and seizures. AR p. 160-83.

---

[1] Plaintiff's age placed her in the category of a "younger person." 20 C.F.R. § 416.963(c).

After her application was denied at the initial stages, the plaintiff requested an ALJ hearing. The ALJ held an initial hearing on July 7, 2011, and then sent the plaintiff for a consultative orthopedic examination and evaluation. After this was completed the ALJ held a supplemental hearing on November 9, 2011. AR pp. 27-76. Thereafter, the ALJ issued an unfavorable decision denying the plaintiff's claim for SSI benefits at the fifth step. AR pp. 13-22.

At the second step the ALJ concluded that the plaintiff had the following combination of severe impairments - osteoarthritis and allied disorders, including tricompartmental osteoarthritis, status-post fracture of the right femur with open reduction internal fixation, and mild left knee osteoarthritis, essential hypertension, migraine headaches and morbid obesity.[2] AR p. 15. At the third step the ALJ concluded that the plaintiff's combination of severe impairments did not meet or medically equal the severity of any listed impairment, and specifically noted that the plaintiff's severe impairments did not meet or medically equal Listings 1.02, 1.03, 1.04, or 4.01. AR p. 16.

The ALJ then evaluated the plaintiff's residual functional capacity ("RFC") to determine whether, despite her severe

---

[2] At the time of her application the plaintiff reported her height as 5 feet 11 inches and her weight at 428 pounds. AR p. 183. On February 16, 2011 the plaintiff's recorded weight was 404 pounds. AR p. 348.

5

impairments, the plaintiff was able to do any of her past relevant work or other work in the national economy.[3] After consideration of the entire record, the ALJ found the plaintiff had the following RFC:

> [T]he claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except she can lift/carry up to 10 pounds continuously (over 2/3 of an 8-hour workday) and 11 to 20 pounds frequently (1/3 to 2/3 of an 8-hour workday); sit for 4 hours at a time for a maximum of 8 hours total in an 8-hour workday; stand for ½ hour at a time for a total of 1 hour maximum in an 8-hour workday, and walk for ½ hour at a time for a total of 1 hour in an 8-hour workday; continuously (over 2/3 of an 8-hour workday) perform overhead reaching, reaching in all other directions, handling, fingering, feeling, and pushing/pulling with both hands; occasionally (up to 1/3 of the day) perform operation of foot controls with both feet; never climb ladders, scaffolds, ramps, and stairs; never perform crouching and crawling; occasionally (up to 1/3 of an 8-hour workday) perform balancing, stooping, and kneeling, never be exposed to unprotected heights and moving mechanical parts; occasionally (up to 1/3 of an 8-hour workday) operate a motor vehicle, and be exposed to humidity and wetness, dusts/odors/fumes/pulmonary irritants, vibrations, and extreme heat and cold; and sustain up to loud noise (such as heavy traffic).

With this RFC and the testimony of both vocational experts, the ALJ concluded that the plaintiff would not be able to do any of her past relevant work. However, considering the plaintiff's age, education, work experience and RFC, and again relying on the experts' testimony, the ALJ and found that the plaintiff would be

---

[3] Residual functional capacity is a measure of a claimant's capacity to do physical and mental work activities on a regular and sustained basis. It is the foundation of the findings at steps four and five. 20 C.F.R. § 416.945.

able to make a successful adjustment to other work as a receptionist/information clerk, office clerk and cashier, and these jobs existed in significant numbers in the national economy.[4] AR pp. 16-21, 67-72. Therefore, the ALJ determined at the fifth step that the plaintiff is not disabled.[5]

In the Plaintiff's Memorandum in Support of Appeal,[6] the plaintiff argued the following administrative errors require reversal and remand under sentence four of § 405(g): (1) substantial evidence does not support the ALJ's finding that her diagnosed sleep apnea is not a severe impairment; (2) at step three the ALJ failed to provide a legally sufficient explanation for the finding that the plaintiff's severe impairments did not meet or medically equal any listed impairment; (3) the ALJ found that migraine headaches were a severe impairment, but failed to include

---

[4] Work exists in the national economy when it exists in significant numbers either in the region where the claimant lives or in several other regions of the country; when there is a significant number of jobs, in one or more occupations, having requirements which the claimant is able to meet with his physical or mental abilities and qualifications. It does not matter whether work exists in the immediate area in which the claimant lives, a specific job vacancy exists for the claimant, or the claimant would be hired if he applied for work. However, isolated jobs that exist only in very limited numbers in relatively few locations outside of the region where the claimant lives are not considered work which exists in the national economy. 20 C.F.R. §§ 404.1566(a).

[5] Plaintiff exhausted her administrative remedies before filing this action for judicial review. The ALJ's decision is the Commissioner's final decision for purposes of judicial review.

[6] Record document number 10.

limitations caused by this impairment in the RFC finding; and, (4) the ALJ improperly rejected the opinions of plaintiff's treating physician, Dr. Winston L. Murray, Jr., and instead gave controlling weight to the assessment of the consultative physician, Dr. Stephen Wilson. The analysis below demonstrates that neither the applicable law nor the record support the plaintiff's claims of error.

## Analysis

**The ALJ's finding the plaintiff's sleep apnea was not a severe impairment is supported by substantial evidence.**

Under *Stone v. Heckler*,[7] the ALJ applied the correct severity standard at step two. An impairment is non-severe when it is no more than a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience. Plaintiff argued that under this standard it was error to find her sleep apnea was non-severe, because the evidence showed that the treatment (CPAP machine) did not entirely eliminate her feeling groggy and tired, which could reasonably be expected to interfere with her ability to work.[8]

Plaintiff's claim that substantial evidence does not support the finding that her sleep apnea was a non-severe impairment is

---

[7] 752 F.2d 1099 (5th Cir. 1985).

[8] Record document number 10, supporting memorandum, pp. 16-17.

without merit.  The medical records show that shortly after the plaintiff was diagnosed with sleep apnea she was issued a CPAP machine.  Less than two weeks after getting the machine, the plaintiff reported to her doctor on May 4, 2011 that she was feeling better with the treatment.  According to the plaintiff's testimony at the supplemental ALJ hearing, her doctor changed the CPAP to a full mask to help with dry mouth, snoring and waking up during the middle of the night.  Plaintiff stated that she was still having dry mouth and waking up in the middle of the night, but neither at the supplemental hearing nor in any of the medical records did the plaintiff report to her doctors that she was continuing to feel groggy and tired after obtaining and using the prescribed treatment.  Thus, the record as a whole demonstrates there is substantial evidence to support the ALJ's conclusion that sleep apnea was not a severe impairment.[9]

**The ALJ did not commit reversible error in evaluating whether the plaintiff's impairments satisfied a listed impairment at step three.**

Citing *Audler v. Astrue*,[10] plaintiff argued the ALJ's summary

---

[9] AR pp. 74-75, 323-25, 343-45, 355, 374, 452.  It is the task of the ALJ as the finder of fact to weigh the evidence.  When evidence cuts both ways, it is not the court's job on judicial review to reweigh the evidence.  As long as there is substantial evidence in the record as a whole supporting the ALJ's finding, it must be upheld. *Greenspan v. Shalala,* 38 F.3d 232, 240 (5th Cir. 1994); *Short v. Astrue*, 2013 WL 655020 (N.D. Tex. 2013).

[10] 501 F.3d 446 (5th Cir. 2007).

9

conclusion at step three, without discussion of the evidence, leaves the court unable to tell whether the finding is based on substantial evidence. Plaintiff maintained that this error is not harmless because the evidence related to her impairments of obesity, osteoarthritis of the knees, headaches, hypertension and sleep apnea demonstrate that her condition meets or medically equals Listing 1.02.A (major dysfunction of a joint) or Listing 3.10 (sleep-related breathing disorders).

This claim of error is not supported by the record. Review of the ALJ's decision shows that the ALJ cited *Audler* in the section where she considered the listings. While the ALJ did not discuss the evidence in the section that contained her finding, she specifically stated that the discussion of the evidence and analysis was "further explained below." AR p. 16. Moreover, even if the ALJ's explanation was not sufficient under *Audler*, the substantial rights of the plaintiff were not affected[11] because the plaintiff has not met her burden of demonstrating the specific findings in the record that establish she is able to meet the requirements of Listing 1.02A or 3.10.

---

[11] *Audler*, 501 F.3d at 449; *Garcia v. Astrue*, 2012 WL 13716 (S.D.Tex. Jan. 3, 2012); *Smith v. Astrue*, 2012 WL 3779146 (E.D.La. Aug. 13, 2012); *Wilkinson v. Astrue*, 2013 WL 5328184, 4 (M.D. La. Sept. 20,2013)(where record did not demonstrate plaintiff could meet burden of demonstrating that listing requirements were satisfied, ALJ's failure to set out a sufficient basis for decision at step three is harmless error).

Listing 1.02A requires "[i]nvolvement of one major peripheral weight-bearing joint (i.e., hip, knee, or ankle), resulting in inability to ambulate effectively, as defined in 1.00B2b. Under this latter provision ineffective ambulation is defined generally as having insufficient lower extremity functioning to permit independent ambulation without the use of a hand-held assistive device that limits the functioning of both upper extremities. Although there is evidence in the record, as reflected by the ALJ's RFC finding, that the plaintiff's severe impairments caused limitations in her ability to walk, there is no evidence in the medical records that the plaintiff's ambulation was so extremely limited she required the use of or was prescribed hand-held assistive devices such as canes or a walker. Similarly, Listing 3.10 covers sleep-related breathing disorders. This impairment is evaluated under the criteria of two other listed impairments, Listing 3.09 (chronic cor pulmonale), or Listing 12.02 (organic mental disorders). Plaintiff merely asserted that obesity and sleep apnea with her other impairments appear to medically equal this listing. Plaintiff did not cite any objective medical findings in the record which could establish the required chronic pulmonary insufficiency or loss of mental abilities/function required by the referenced listings.

In summary, the plaintiff has not shown that the record contains objective evidence that could establish the criteria of a

listed impairment.  Therefore, any deficiency in the ALJ's analysis did not affect the plaintiff's substantial rights, and would be a harmless error.  The administrative record considered as a whole provides no basis to reverse the ALJ's decision at the third step bases on a legal error or lack of substantial evidence.

**The ALJ did not commit reversible error in evaluating the opinion evidence.**

Plaintiff argued that the ALJ erred by giving little weight to the opinions of her treating physician, internist Dr. Winston Murray, and great weight to the assessment of orthopedic consultative examiner, Dr. Stephen Wilson.[12]  Based on the legal principles governing an ALJ's evaluation of opinion evidence, this claim of error is also unsupported.

Although the opinion and diagnosis of a treating physician should generally be given considerable weight in determining disability, it is well established that a treating physician's opinions are not conclusive and may be assigned little or no weight when good cause is shown.  The ALJ may discount the weight of a treating doctor's medical opinion when it is conclusory, unsupported by medically acceptable clinical, laboratory or diagnostic techniques, or is otherwise unsupported by the evidence.  *Newton v. Apfel*, 209 F.3d 448, 455-56 (5th Cir. 2000).  An ALJ is

---

[12] AR pp. 400-10 (Dr. Wilson's report of physical examination and assessment of ability to do work-related activities).

12

free to reject the medical opinion of any physician when the evidence supports a contrary conclusion. *Bradley v. Bowen*, 809 F.2d 1054, 1057 (5th Cir. 1981).

The regulations also state that when the ALJ finds the medical opinion is not entitled to controlling weight, certain factors should be considered in deciding how much weight to give the opinion. These factors include the length of treatment, the consistency of the opinion with the record as a whole, and the treating physician's specialization. 20 C.F.R. § 416.927© and (d); *Newton*, 209 F.3d at 458. However, the ALJ need not consider each of the factors where there is competing first-hand medical evidence and the ALJ finds that one doctor's opinion is more well-founded than another. *Id.; Walker v. Barnhart*, 158 Fed.Appx. 534 (5th Cir. 2005).

Essentially for the reasons explained by the Commissioner, the administrative record shows that the ALJ's weighing of these doctors' opinions complied with the above standards and was supported by the record.[13] Because there was competing first-hand medical evidence, the ALJ was not required to evaluate Dr. Murray's opinions using all the factors in the regulations. Nevertheless, the ALJ adequately articulated why she gave little weight to Dr. Murray's opinions. As explained by the ALJ, there was good cause

---

[13] Record document number 12, Defendant's Opposition Memorandum, pp. 11-14.

13

not to fully credit Dr. Murphy's opinions regarding the plaintiff's limitations. They were conclusory, and neither Dr. Murray's treatment records nor the records of the other doctors contain the findings on physical examination or other objective evidence to support the extreme limitations indicated on his checklist.[14]

Plaintiff also argued that the ALJ erred by according little weight to the opinions of Dr. Murray, because as her treating internist his evaluation took into account limitations caused by migraines and sleep apnea. Whereas, Dr. Wilson, who did an orthopedic evaluation, did not render any opinion on how her migraines and sleep apnea affected her functioning. Therefore, plaintiff argued that the ALJ was required to at least give controlling or great weight to Dr. Murray's opinions.[15]

Plaintiff's argument is without merit for several reasons. First, there is no indication in Dr. Murray's evaluation that the extreme limitations in work attendance and performance he noted are attributable to migraine headaches or sleep apnea. The questions and his response generally state the limitations result "because of pain". AR p. 358. Second, as explained above, while the records

---

[14] AR pp. 356-59 (5/31/11 physical capacity evaluation checklist), 292-314, 365-80; 243-44, 274-80, 282-91, 336-40, 343-55, 362-64, 366-67, 425, 427-32, 450-51.

[15] Dr. Murray opined that the plaintiff has extreme limitations in maintaining attendance, performing within a schedule, completing a work day and work week without interruptions from medically based symptoms, and performing at a consistent pace. These limitations come from sections V and VI of Dr. Murray's evaluation. AR p. 358.

14

of Dr. Murray and the doctors to which he referred the plaintiff establish a diagnosis and treatment for migraines and sleep apnea, the medical records are devoid of objective evidence to support the extent of the limitations found by Dr. Murray. The mere diagnosis of an impairment is insufficient to establish that an impairment is severe or disabling. In other words, the existence of the impairment does not establish that functional limitations - the extent to which the impairment limits a claimant's ability to perform work-related activities - result from the impairment.[16] Thus, the ALJ's consideration of Dr. Murray's opinions complied with the relevant legal standards, and her decision not to give them controlling or significant weight was supported by substantial evidence.

**The ALJ's RFC finding and finding at the fifth step are supported by substantial evidence.**

Plaintiff argued that the ALJ's failure to include in the RFC finding any limitations attributable to the severe impairment of migraine headaches is reversible error. Plaintiff's argument is unsupported for the following reasons. The argument is based on the premise that in determining the RFC the ALJ relied on the opinions of an orthopedist, Dr. Wilson, who did not account for migraines in his physical capacity evaluation. A review of the

---

[16] *Hames v. Heckler*, 707 F.2d 162, 165 (5th Cir. 1983); *Harvey v. Astrue*, 2013 WL 2244282 (E.D. La. May 21, 2013).

15

ALJ's decision and analysis shows that the ALJ did not rely solely on Dr. Wilson's report to determine the plaintiff's RFC. In accordance with the regulations, the ALJ considered the records/opinions from all of the plaintiff's doctors as well as the plaintiff's statements and testimony about her daily activities. AR pp. 16-22.

Plaintiff also appeared to argue that by leaving out the extreme limitations in maintaining regular attendance and completing a normal work day found by Dr. Murray, the ALJ did not include limitations for migraine headaches in her RFC finding. This argument is unpersuasive because, as explained above, the questions/responses on the form completed by Dr. Murray do not attribute these limitations to severe migraine headaches. Moreover, the medical records support finding that migraine headaches did not cause these restrictions on the plaintiff's ability to attend work and complete a normal work day. The records show that after Dr. Murray referred the plaintiff to a neurologist for evaluation and treatment of her headaches in March 2010, there is no evidence of continued emergency room visits,[17] or that the plaintiff reported to her doctors that the treatment was not working, or that she was continuing to suffer incapacitating headaches on a frequent basis. Thus, the medical records do not

---

[17] The records reflect that in the latter part of 2009 the plaintiff had several emergency room visits for severe headaches.

support the plaintiff's hearing testimony that, despite treatment, she was experiencing severe migraine headaches at least twice a week and the condition was getting much worse.[18]

Therefore, the plaintiff's argument that the ALJ failed to properly consider her headaches in determining her RFC is unsupported, and substantial evidence in the record as a whole corroborates the ALJ's RFC finding.

After the ALJ determined the plaintiff's RFC and found at step four that the limitations caused by the plaintiff's impairments prevented her from doing any past relevant work, the ALJ correctly obtained vocational testimony to determine whether there was other work the plaintiff could do.[19] In response to the questions presented at the hearing, which fairly incorporated all of the plaintiff's limitations recognized by the ALJ, vocational expert Chrystal Younger stated that given the plaintiff's age, education, work experience and RFC, there were jobs existing in significant numbers in the national economy that the plaintiff would be able to perform - receptionist and information clerk, office clerk and

---

[18] AR pp. 44-45, 73-74, 245-71, 253, 255, 266, 284-85, 288-89, 305, 343-46, 366-67, 450-51.

[19] The RFC finding of the ALJ included nonexertional limitations. It is well established that if a claimant has nonexertional limitations the ALJ uses the Medical-Vocational Guidelines only as a framework, and is required to obtain vocational expert testimony to support his findings at step five of the disability analysis. *Bowling v. Shalala*, 36 F.3d 431, 435 (5th Cir. 1994); *Fields v. Bowen*, 805 F.2d 1168, 1170 (5th Cir. 1986); *Vaughn v. Shalala*, 58 F.3d 129, 132 (5th Cir. 1995).

cashier. This vocational evidence constitutes substantial evidence to support the ALJ's finding at the fifth step that the plaintiff is not disabled within the meaning of the Social Security Act.

**Conclusion**

The record considered as a whole shows that the ALJ applied the proper legal standards and substantial evidence supports her determination at the fifth step that the plaintiff is not disabled.

**RECOMMENDATION**

It is the recommendation of the magistrate judge that under sentence four of 42 U.S.C. § 405(g), the final decision of the Acting Commissioner of Social Security, Carolyn W. Colvin, denying the applications for supplemental security income benefits filed by plaintiff Zabrena Laverne Conley be affirmed, and this action be dismissed.

Baton Rouge, Louisiana, February 19, 2015.

STEPHEN C. RIEDLINGER
UNITED STATES MAGISTRATE JUDGE